## The State v. Nugent, *Appellant.*

1. **Criminal Law:** EVIDENCE OF ANOTHER OFFENSE, WHEN ADMISSIBLE: MURDER. On the trial of an indictment for one offense, evidence of another offense committed by the prisoner may be given against him if it tends to establish the offense charged, or any fact which is one of its constituent elements. Hence, in support of a charge of murder, evidence may be introduced to show that on several occasions previous to the homicide, defendant threatened, assaulted and attempted to kill the deceased.

2. ———: ———. Such evidence as the foregoing is admissible, not simply for the purpose of proving intent, but generally, in support of the charge of deliberate murder. It equally proves deliberation and intent.

3. **Practice, Criminal:** WITNESS. The State is not bound to furnish the defendant with a list of her witnesses before trial.

4. ———: REASONABLE DOUBT. If the trial court, after informing the jury what facts will constitute guilt on the part of the accused, further instructs them that before they can find him guilty those facts must be found beyond a reasonable doubt, that is sufficient. It is not necessary to go further and instruct as to the effect of a reasonable doubt of the presence of any one or more of the elements of the crime.

5. ———: INSTRUCTIONS. The trial court is not bound, unless requested, to instruct the jury as to the legal effect of evidence offered by defendant to establish his general reputation as a peaceable and quiet citizen.

6. ———: DELAY IN TRYING ACCUSED. This court will not interfere with the action of the trial court in refusing a prisoner's motion to be discharged from custody for delay in bringing him to trial, unless it is made to appear by the record that the delay was unreasonable.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*F. D. Turner* for appellant.

1.   The evidence of defendant's prior mistreatment of deceased should not have been admitted.   *U. S. v. Armstrong,* 2 Curtis C. C. 446; *U. S. v. Mingo,* 2 Curtis C. C. 1; *Com. v. Hawkins,* 3 Gray 463; *Green v. State,* 13 Mo. 382; *State v. Schoenwald,* 31 Mo. 147; *State v. Foster,* 61 Mo. 552; *State v. Underwood,* 57 Mo. 45; *State v. Lane,* 64 Mo. 322.; *State v. Goetz,* 34 Mo. 91; *State v. Harrold,* 38 Mo. 498; *Farrer v. State,* 2 Ohio St. 75; *Barton v. State,* 18 Ohio 224; *Reg. v. Oddy,* 1 Den. & Pearce Brit. Crown Cas. 266; *Reg. v. Butler,* 2 Car. & Kir. 221; *State v. Daubert,* 42 Mo. 246; *Walker v. Com.,* 1 Leigh (Va.) 574; *Shaffner v. Com.,* 72 Pa. St. 65; *Kinchelow v. State,* 5 Humph. 9; *State v. Shuford,* 69 N. C. 486; *Wiley v. State,* 3 Coldw. 372; *Lightfoot v. People,* 16 Mich. 507; *Mason v. State,* 42 Ala. 533; *s. c.,* 42 Ala. 543; *U. S. v. Mitchell,* 2 Dallas 357; Wharton Cr. Law, §§ 631, 632, 633, 634, 635, 650; *State v. Roberts,* 62 Mo. 388; *Dyson v. State,* 26 Miss. 385; *Hudson v. State,* 3 Coldw. 361; *State v. Creson,* 38 Mo. 373; 3 Greenleaf Ev., §§ 25, 53; *Com. v. Webster,* 5 Cush. 325; *People v. White,* 14 Wend. 111; *People v. Stout,* 4 Park. Crim. R. 127; *Reg. v. Dossett,* 2 Car. & Kir. 306; 1 Phillips Evidence, (Cow. & Hill Ed.) 644; Roscoe Crim. Ev., 92; *State v. Keene,* 50 Mo. 360; *State v. Sloan,* 47 Mo. 611; *Rex v. Birdseye,* 4 C. & P. 386; Starkie Evidence, 379; *State v. Braunschweig,* 38 Mo. 589; *State v. Dominique,* 30 Mo. 585; *Reg. v. Voke,* 1 R. & R. (Brit. Cr. Cas.) 531; 3 Russell Crimes, (9 Ed.) *289; *Reg. v. Bailey,* 2 Cox C. C. 311; *Rex v. Mogg,* 4 C. & P. 364; *State v. Rash,* 12 Ired. 383; *Stone v. State,* 4 Humph. 27; *Johnson v. State,* 17 Ala. 619; *People v. McCann,* 3 Park. Cr. R. 272; *People v. Williams,* 3 Park. Cr. R. 84; 1 Chitty Cr. Law, § 564.

2.   The court should have instructed the jury that the evidence of prior acts was admitted only for the purpose of proving intent.   *Com. v. Shepard,* 1 Allen 575; *Stout v.*

*People,* 4 Park. Cr. R. 132. *State v. Watkins,* 9 Conn. 47; *Shaffner v. State,* 72 Pa. St. Rep. 63; *State v. Hart,* 66 Mo. 215; *Leonard v. Smith,* 11 Met. 332; *King v. Grant,* 3 Neville & Manning's Rep. 106; *McTavish v. Carrol,* 13 Md. 440; *O'Brien v. Hilburn,* 22 Texas 616; *State v. Wadsworth,* 30 Conn. 56; *State v. Neville,* 6 Jones 432; *Henry v. Everts,* 29 Cal. 610; *King v. Faber,* 51 Pa. St. 387; *Johnson v. Marshall,* 34 Ala. 522.

3. The defendant should have been apprised, before the trial, of the names of the State's witnesses. *Ray v. State,* 1 Greene 316; *Holbrook v. Nichol,* 36 Ill. 161; *Peers v. Davis,* 29 Mo. 190; Graham & Wat. on New Trials, p. 952; Queen's case, 2 Brod. & Bing. 312; *Ware v. Ware,* 8 Me. 54; *Wilson v. Clarke,* 27 Miss. 270; *Todd v. State,* 25 Ind. 220; *Keller v. Blasdel,* 2 Nev. 162; *Knox v. Bigelow,* 15 Wis. 415; *Morrow v. Hatfield,* 6 Humph. 108; *Stewart v. Durrett,* 3 Monr. 113; *Vannerson v. Pendleton,* 8 S. & M. 452; *Donnallen v. Lennox,* 6 Dana 89; *Price v. Ford,* 7 Monroe 399; 18 Eng. L. & Eq., 105; *Holmes v. McKinney,* 4 Monr. 5.

4. The court erred in refusing and failing to instruct the jury as to the effect of a reasonable doubt as to the existence of deliberation or premeditation. *Com. v. McKie,* 1 Gray 61; *State v. McCluer,* 5 Nev. 132; *Com. v. Kimball,* 24 Pick. 366; *West v. State,* 1 Wis. 209; *Henderson v. State,* 14 Texas 514.

5. Evidence of defendant's good character was admitted; it was, therefore, the duty of the court to have instructed as to its legal effect. *State v. Alexander,* 66 Mo. 161; *U. S. v. Roudenbush,* 1 Baldwin 514; *State v. McMurphy,* 52 Mo. 251; *State v. Matthews,* 20 Mo. 55; 1 Wharton Cr. Law, § 643; 2 Starkie Ev., 472.

6. Defendant's motion for a discharge should have been granted. *Robinson v. State,* 12 Mo. 595; *State v. Huting,* 21 Mo. 475; *Com. v. Sheriff,* 16 Serg. & R. 304; *Com. v. Phillips,* 16 Mass. 423. *Reg. v. Fuller,* 9 C. & P. 35; *Ex parte Stanley,* 4 Nev. 113; *Campbell v. State,* 11 Ga. 365; Cooley Const. Lim., 311; *Rex v. Beardmore,* 7 C. & P. 497;

*Reg.* v. *Bridgman,* 1 Car. & Marsh. 153 ; *Com. v. Prophet,* 1 Browne 135.

*J. L. Smith,* Attorney-General, for the State.

1. The defendant was not entitled to be discharged. *Nixon v. State,* 2 Sm. & Marsh. 497 ; *Ex parte Stanley,* 4 Nev. 116 ; *Ex partè Donaldson,* 44 Mo. 149.

2. The evidence of defendant's abuse of deceased, and of his previous attempts to kill her, was properly admitted. Wharton Crim. Law, §§ 635, 636, 639, 640, 647, 647a ; Wharton Hom., §§ 701, 725 ; 2 Russell Crimes, (9 Ed.) 288, 289 ; *Rex. v. Voke,* Russ. & R. 531 ; *Reg. v. Weeks,* Leigh & Cave 18 ; *Reg. v. Roebuck,* 36 Eng. L. & Eq. 631 ; *Com. v. Bradford,* 126 Mass. 42 ; *State v. Rash,* 12 Ired. 382 ; *Johnson v. State,* 17 Ala. 618 ; *McCann. v. People,* 3 Park. Cr. R. 272 ; *Stone v. State,* 4 Humph. 27 ; *People v. Stout,* 4 Park. Cr. R. 71 ; *Dunn v. State,* 2 Ark. 229 ; *State v. Watkins,* 9 Conn. 47 ; *State v. Green,* 35 Conn. 203 ; *Bottomley v. U. S.,* 1 Story C. C. 135 ; *State v. Raymond,* 20 Iowa 582.

3. There was no surprise. *State v. Rogers,* 37 Mo. 367 ; *Matthews v. Allaire,* 11 N. J. L. 242 ; *R. R. Co. v. Vosburgh,* 45 Ill. 311 ; *Peers v. Davis.* 29 Mo. 184 ; *Boyce v. Mooney,* 40 Mo. 104 ; 3 Gra. & Wat. New Tr., 875, 876, 877.

HENRY, J.—The defendant was indicted for the murder of his wife, and a trial at the November term, 1878, of the St. Louis criminal court resulted in his conviction of murder of the first degree ; and from the judgment he appealed to the St. Louis court of appeals, which affirmed the judgment, and he has appealed to this court.

Appellant assigns as error : *First,* The admission of illegal and incompetent testimony on the part of the State. *Second,* The failure of the court to confine the testimony complained of, by instruction, to the object for which the court admitted it, viz : to prove intent. *Third,* The failure of the court to grant a new trial on the ground of surprise. *Fourth,* The refusal of the court to grant a new trial on

account of improper conduct of the circuit attorney in his
closing address to the jury.   *Fifth,* The refusal of the court
to give instructions asked by defendant, with respect to a
reasonable doubt as to the existence of deliberation or
premeditation.   *Sixth,* The failure of the court to instruct
the jury as to the legal effect of evidence introduced by
defendant to establish his general reputation as a peaceable
and quiet citizen.   *Seventh,* The refusal by the court to
grant defendant's motion to be discharged, for reasons in
the motion assigned.

The testimony for the State proved that defendant
killed his wife by shooting her with a pistol, on the 20th day
of August, 1876.   Elizabeth Kerr, a witness
for the State, heard a shot, and children
screaming, and went to Nugent's house, saw
Nugent with a pistol in his hand near the little porch out-
side his house.   His daughter, about fifteen years of age,
came out of the house and said: "Pa, you killed ma."
He said, "I know I did, and I am glad of it, and she is
gone and I am willing to go."   Witness then stated that
there were bruises on the person of the deceased, other
than the wound inflicted by the pistol ball.   Mrs. Woehler
testified that she heard the shot, heard quarreling between
defendant and deceased; that defendant said he wanted
something to eat; and deceased said she had nothing for
him; and defendant said he would shoot her; then his
daughter came and screamed, "You have killed ma."   He
replied, "I know I did, and that is what I wanted to do."
Witness heard defendant twice say he would shoot his wife,
and heard the pistol shot immediately after he last said it.
The testimony of Charlotte Ickeworth, Caroline Meinhold
and Henry Woehler, was about the same as that of Mrs.
Woehler.

The State then introduced evidence tending to show
that within sixty days preceding the homicide, the defend-
ant frequently mistreated his wife, at one time driving her
from the house and shooting at her; at another striking

*Marginal note:* 1. CRIMINAL LAW; evidence of another offense, when admissible: murder.

her with a poker; at another cutting her with a knife; also evidence of a threat that he would kill her, to all of which defendant objected, and now contends that it was inadmissible, on the ground that when the intention appears from the facts and circumstances of the transaction itself, evidence of other facts wholly disconnected with the charge for which the defendant is on trial, cannot be introduced against him. In support of this proposition he cites many cases and elementary works to show, what is not controverted, that the law infers malice from the act of killing. It does not, however, infer murder in the first degree from an intentional killing. The common law presumed from an intentional killing, murder; but under our statute establishing two degrees of murder, if nothing but the intentional killing appears, it is murder in the second degree. The defendant was indicted for murder of the first degree, and the State had the right to introduce any evidence to show that the killing was of that degree. You cannot infer the guilt of a person of a felony he is charged with from proof of his guilt of some other distinct crime, even of the same nature. But in the *People v. Stout*, 4 Park. Crim. Rep. 127, relied upon by defendant's counsel, the court remarked: "It is important not to confound the principle upon which these two classes rest; on the one hand it is admissible to produce evidence of a distinct crime to prove the *scienter*, or to make out the *res gestae*, or to exhibit a chain of circumstantial evidence of guilt in respect to the act charged; on the other hand, it is necessary strictly to limit the evidence to these exceptions, and to exclude it when it does not legitimately fall within its scope."

Another author cited by counsel for the prisoner, says: "Perhaps the following sentence expresses the doctrine in as distinct and express terms and outline as can well be employed: It is, though the prisoner is not to be prejudiced in the eyes of the jury by the needless admission of testimony to prove another crime, yet whenever the evi-

dence which tends to prove the other crime tends also to prove this one, not merely by showing the prisoner to be a bad man, but by showing the particular bad intent to have existed in his mind at the time when he did the act complained of, it is admissible; it is also admissible, if it really tends thus, as in the facts of most cases it does not, to prove the act itself." Bish. Crim. Pr., § 493.

A case cited by the court of appeals, and commented upon by counsel, (*Reg. v. Voke*, 1 R. & R. British Crown Cases 531,) was for maliciously shooting. The evidence of Pearce, prosecuting witness, was that on the 3rd day of July, he was game keeper for Lord Glastonburry for the manor of Compton, and on that day went to the manor and saw prisoner with a gun, and asked him what he was about, and told him he was doing a wrong thing, and asked him why he was doing so; that prisoner asked Pearce to pardon him, and he told the prisoner he could not, and requested him to go to the Lord's Steward with him. He consented, and the two walked together until coming near prosecutor's horse, about sixty yards distant, the prosecutor went ahead, and when a short distance from the prisoner, the latter fired at his back, but said nothing. Pearce then turned around and saw prisoner running, and attempted to pursue him, but his back seemed to be broken, and he could not pursue him. Pearce then turned back to the horse, and, after mounting, was going home and had proceeded about a half mile to a place where there was a hedge on each side of the road, when the prisoner again fired his gun from the hedge and put out one of Pearce's eyes. Between the first and second firing a quarter of an hour elapsed. The evidence of the second firing was held admissible on the ground that it seemed to be one continued transaction, and also to show that the first firing was willful, not accidental.

If admissible to show willfulness, we cannot see why not also competent, under our statute, to show deliberation, which, no less than willfulness, is one of the constituent

elements of murder in the first degree.   If what transpired
when the homicide was committed, only shows murder of
the second degree, upon what principle is evidence for the
State tending to show the higher grade of offense with
which the defendant is charged, to be excluded?   If the
State is to be confined to evidence of what transpired im-
mediately in connection with the homicide, in no case could
one be convicted of murder of the first degree, unless the
acts directly accompanying the homicide showed the delib-
eration which it is necessary for the State to prove in order
to convict the accused of that crime. Proof of an intentional
killing, without more, would be sufficient on the defend-
ant's theory to exclude all evidence of the previous exist-
ence of hatred and malice on the part of the accused to-
ward the deceased, and of threats made by him against the
life of the deceased, and thus place it in the power of the
slayer to determine the degree of crime of which he will
be convicted.   He can seek an opportunity to kill when
nothing can be shown but the intentional killing, and thus
secure the exclusion of all evidence of previous threats,
malignity and attempts upon the life of the deceased, and
defy the State to prove the murder of which he is guilty
as charged.

We undertake to say that no case in England or Amer-
ica countenances such a doctrine.   If the fact of the com-
mission of a former crime has no tendency to prove the
commission of the one for which the accused is on trial, or
any essential ingredient of the latter, it is of course inad-
missible for any purpose, and this is as far as any case has
gone in that direction.   But if the commission or attempt
to commit another crime, tends to establish the commission
of the crime in question, or any fact which is one of its
constituent elements, it is admissible, just as any other evi-
dence, to establish the fact, and the State cannot be deprived
of such evidence, because it proves the accused guilty of
another and distinct offense.   1 Bishop Crim. Procedure,
§§ 491, 492.   "On an indictment for murder, former at-

tempts of the defendant to assassinate the deceased are admissible in evidence." Wharton's Crim. Law, § 635. If the crime charged is established by other evidence, there is no necessity for proving such prior attempts to assassinate. But, can the court assume that any evidence has established the guilt of the accused, and exclude evidence which is legitimate to prove such guilt?

Here the question was, not only whether the accused killed the deceased intentionally, but whether he was guilty of murder of the first or of the second degree. The fact that he intentionally killed, without more, only proved him guilty of murder in the second degree, but the State, by the indictment, charged the higher degree, and had a right to introduce such evidence as was available to establish that charge. The former offenses against the wife tended to show the state of feeling of the accused toward her, and to prove that the killing was not only intentional and malicious, but also deliberate. The authorities cited by the counsel for the accused, we think sustain the action of the trial court in admitting the evidence.

The court did not err in refusing "by instruction to confine the evidence of the previous misconduct of the accused toward the deceased, to the object for which the court admitted it, viz: to prove intent." It was admissible, not only for that purpose, but generally in support of the charge of deliberate murder. It equally proved deliberation and intent.

As to the fourth alleged error, the conduct of the circuit attorney was not as circumspect as it might have been, but it was not so far out of the limits of legitimate discussion as to warrant a reversal of the judgment.

The motion for a new trial on the ground of surprise, was properly overruled. There is no law or practice in Missouri requiring the State to furnish the accused with a list of her witnesses. The names of all material witnesses must be indorsed upon the indictment, but other witnesses may be called or subpœnaed

to testify for the State, and the only consequence of a failure to indorse their names upon the indictment, is that no continuance will be granted the State on account of the absence of such witnesses, unless upon affidavit of the prosecuting attorney showing good cause for continuance. § 1802, R. S. 1879. It cannot be a surprise to the accused, that is, a technical surprise, such as is recognized as a ground for setting aside a verdict that witnesses are introduced to prove his guilt, of whom he had not heard as witnesses. There would be no end of new trials if this were recognized as a ground for granting them. In this case, however, the defendant has no cause of complaint on that score, for his attorney was furnished with a list, by the prosecuting attorney through an officer of the court, and he declined to examine it, insisting upon some other mode or time of serving him with it. It was a matter of grace and favor, and not of duty, that the prosecuting attorney delivered it at all.

The refusal of the court to give an instruction asked by defendant with regard to the effect of a reasonable doubt
4. ——: reasonable doubt. as to the existence of deliberation or premeditation, it is contended, was error. It is not the practice to separate the elements of murder and give the instruction as to reasonable doubt upon each of those constituents separately. If there is any room to doubt the principal fact, that the accused committed the homicide, it is frequently asked and given with regard to that fact alone. In its instruction the court defined the terms "deliberation" and "premeditation," and clearly informed the jury that if they had a reasonable doubt of his guilt, they should acquit the defendant. They were told what facts would constitute guilt, and that those facts must be found beyond a reasonable doubt.

He also complains that the court did not instruct the jury as to the legal effect of evidence introduced by him
5. ——: instructions. to establish his general reputation as a peaceable and quiet citizen. Defendant's counsel

asked no instruction which was refused, but contends that the court, of its own motion, should have instructed the jury on the subject.   We had occasion, at this term, in the case of the *State v. Kilgore*, 70 Mo. 546, to consider that question, and decided it adversely to the prisoner, and to that decision we adhere.

It only remains to consider whether the court should have sustained defendant's motion for a discharge under section 27, page 1105, Wagner's Statutes, which is as follows: · "If any person indicted for any offense and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense, which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to the offense for which he was committed, unless the delay shall happen upon the application of the prisoner, or shall be occasioned by the want of time to try the cause at such second term."

He was indicted at the November term, 1876, and on his application at the January, March, May and July terms, 1877, the cause was continued.   At the October and November terms, 1877, and the January term, 1878, it was continued by the State, and at the March term, 1878, the defendant filed his motion for discharge under the statute, which was overruled, and the cause was again continued for the State, on account of absence of witnesses.   At the May term, 1878, he renewed his motion, which was overruled, and the cause was again continued by the State.   Again at the July term he renewed his motion, which was again overruled, and the court, of its own motion, continued the cause.   At the October term, 1878, it was continued by consent of parties.   At the November term, 1878, 14th day of December, the defendant renewed his motion for discharge, but subsequently withdrew it and again filed a similar motion on the 17th day of December, 1878, which was overruled, and at the same term he was tried and convicted. It thus appears that there were eleven continuances, four

on the application of defendant, five by the State, one by consent and one by the court of its own motion.

In *Ex parte Donaldson*, 44 Mo. 149, section 27, page 1105, Wagner's Statutes, was held not to apply to the St. Louis criminal court.

Defendant contends that under section 22 of the bill of rights, article 2, constitution of 1875, which provides that "in criminal prosecutions, the accused shall have the right to a speedy public trial," he was entitled to his discharge. It was not the intention of the framers of the constitution to confer a right to a speedy trial, without regard to the law organizing and fixing times for holding terms of our criminal courts. The evident and only practical construction of that section is, that the State shall not, when no sufficient reason exists for it, hold the prisoner in custody and harass him by imprisonment, when he might be tried and acquitted or convicted. If we had nothing but that provision of the constitution on the subject, the State might, as often as there were good and sufficient reasons, continue the cause. As we observed in *Ex parte Donaldson*, "were there no statute on the subject, the courts might have the unquestionable right to intervene, when the delay, oppression and wrong were palpable." Section 27, *supra*, was intended to prescribe a fixed rule upon the subject, and not leave the rights of the accused to be determined by the indefinite requirement of the bill of rights.

In this case the State, for four terms, was ready for trial, and the defendant, at each of those terms, applied for and obtained a continuance. Then for five consecutive terms thereafter the accused was ready, and the State, not being ready, applied for and obtained continuances. At one term the court, of its own motion, continued the cause, and at another it was by consent of parties continued. The presumption is that the continuances granted to the State, on her application, and by the court, of its own motion, were for good and sufficient reasons in the absence of any-

thing of record to the contrary.   The simple fact that there
was so long a delay in bringing the cause to trial, is by no
means conclusive that the accused had not as speedy a trial
as under the circumstances could have been obtained, by
the exercise of the utmost diligence on the part of the
officers of the State.

We have thus noticed *seriatim* the several grounds
which are relied upon for a reversal of this judgment, and
are fully satisfied that no error was committed by the trial
court in the progress of the cause, and consequently the
judgment of the court of appeals, affirming that of the St·
Louis criminal court, is affirmed.   All concur.