THE STATE v. RIDER, *Appellant.*

1. **Criminal Practice** : CHANGE OF VENUE. The action of the trial court in denying a change of venue because of the prejudice of the inhabitants of the county will not be interfered with even where the evidence is conflicting, unless there has been a palpable abuse of judicial discretion to the prejudice of the defendant.

2. **Murder in First Degree**: JUSTIFIABLE HOMICIDE. Where the evidence shows that one charged with murder either deliberately shot the deceased for revenge or in self-defence, the instructions are properly confined to murder in the first degree and justifiable homicide.

3. ———— : ———— : INSTRUCTIONS. The court did not err in refusing in this case to instruct on murder in the second degree or on any degree of manslaughter.

4. **Homicide**: THREATS OF DECEASED. A homicide cannot be justified by the previous threats of the deceased unaccompanied by any hostile demonstrations at the time of the killing.

5. ———— : EVIDENCE. It is competent on a trial for murder to prove all the acts of the defendant in preparing for the homicide, even though such acts involve the commission of another crime.

6. ———— : ————. The fact that the deceased had stated some two weeks before the homicide, that he had had sexual intercourse with defendant's wife does not tend to prove that deceased first assaulted defendant when the killing occurred.

7. ———— : ———— : DECLARATIONS OF DEFENDANT. Declarations of the defendant made a few minutes after the homicide, and after he had gone two or three hundred yards from where it occurred, are not admissible in evidence as part of the *res gestae*.

8. ———— : DEFENDANT TESTIFYING, IMPEACHMENT OF. Where a defendant has offered himself on a criminal trial as a witness on his own behalf the state may offer evidence to impeach his general reputation.

*Appeal from Saline Criminal Court.*—HON. JOHN E. RYLAND, Judge.

AFFIRMED.

*Boyd & Sebree* and *Davis & Wingfield* for appellant.

(1) The court should have instructed on a lower grade of homicide than murder in the first degree. *State v. Robinson*, 73 Mo. 306; *State v. Edwards*, 70 Mo. 480; *State v. Curtis*, 70 Mo. 594; *State v. Anderson*, 86 Mo. 309. If the defendant had passion or excitement of the mind, which was not provoked by what the law

accepts as adequate cause so as to rebut the imputation of malice, an intentional killing under the influence of such a passion or excitement, was murder in the second degree. *State v. Curtis*, 70 Mo. 594; *State v. Ellis*, 74 Mo. 207. (2) The court erred in giving the second instruction for the state. (3) The third instruction for the state is wrong, for it plainly assumes the guilt of the defendant and requires him to produce evidence to justify, excuse, or palliate the offence of murder. That the court may have properly defined self-defence does not cure the error. The fact that defendant was the only witness to the killing did not warrant the court in assuming that his evidence was untrue and that there was no evidence to support defendant's theory of the case. *State v. Palmer*, 88 Mo. 568; *People v. Williams*, 17 Pac. Rep. 211; *State v. Tate*, 12 Mo. App. 327; *State v. Banks*, 73 Mo. 592; *State v. Anderson*, 86 Mo. 309; *State v. Wheeler*, 79 Mo. 366; *State v. McNally*, 87 Mo. 644-658. (4) The third instruction was erroneous also in this, that it was calculated to mislead the jury as to the purposes for which threats were admitted in evidence, and in effect leads the jury to believe that the evidence of threats can only be considered when they are satisfied from the other evidence in the case that an actual assault or actual demonstration of violence was made by deceased; when, in fact, the evidence of threats was admissible for the purpose only of showing the probabilities as to who made the assault. *State v. Elkins*, 63 Mo. 159; *State v. Alexander*, 66 Mo. 148; *State v. Sims*, 68 Mo. 305, 309, and cas. cit.; *State v. Rider*, 90 Mo. 54; *State v. Anderson*, 86 Mo. 309. (5) The court committed error in refusing to give the second instruction asked by the defendant. This was the only instruction asked which clearly and fully set out the rights of the defendant under the evidence, and defined his theory of the case. It is the law of the case and should have been given. *State v. Anderson*, 86 Mo.

309. (6) The court erred in permitting Milton Camp-bell to testify that, "on the evening before the killing: defendant caught up with him on the public road and. asked him if he had a pistol and that he told defendant he had not, but defendant told him he had and drew a. gun on him and told him if he did not give it to him he would kill him—and thus made him give up his pistol." The tendency of this evidence was to show defendant guilty of another crime than that for which: he was on trial, to-wit, highway robbery, and had no relation to, and no tendency to prove the commission of the crime for which defendant was on trial, or any essential ingredient thereof. It prejudiced the minds: of the jury against defendant. *State v. Nugent*, 71 Mo. 143; *State v. Goetz*, 34 Mo. 89; *State v. Reid*, 85 Mo,. 199; *State v. Wonderly*, 17 Mo. App. 601; Wharton's: Crim. Evid., sec. 30. (7) The court erred in refusing to permit Charles Dobyns to testify that, "about two weeks before the death of Tallent he told witness that he was in the habit of having sexual intercourse with Mart Rider's (defendant's) wife, and (pointing to an: apple-tree) said he had done it to her several times. under that tree." This, in connection with the threats. proven, and the other evidence in the case, tended. strongly to sustain defendant's statement and theory of the case that. deceased assaulted him with an axe, and. was stronger evidence in support of that theory than. evidence of threats alone. *State v. Elkins*, 63 Mo. 159;. *State v. Alexander*, 66 Mo. 148; *State v. Lee*, 66 Mo. 165; *State v. Adams*, 76 Mo. 355; *State v. Grant*, 79 Mo. 113; *State v. Husky*, 79 Mo. 509; *State v. Hayden*, 83: Mo. 198. (8) The court committed error in refusing to permit the defendant, while a witness on the stand, and also the witness Merrill, to testify that "within about one minute after the shot was fired the defendant told said Merrill that he—defendant—had shot Tallent, that.

he had to do it." This evidence was legal and compe-
tent in rebuttal of the theory and evidence of the state.
Witness Ireland for the state had been permitted to
testify to acts and conduct of defendant on the night
and day after the killing tending to show a concealment
of his act of killing, and for the purpose of rebutting
this the evidence offered was material, legal, and proper.
(9) The court erred in permitting the state to ask the
question, as to defendant's reputation in the neighbor-
hood in which he lived, for truth, veracity, morality,
and chastity.

B. G. Boone, Attorney General, and A. F. Rector,
Prosecuting Attorney, for the state.

(1) The court did not err in overruling the applica-
tion for change of venue. The finding of the court on
the question of the prejudice of the inhabitants is final
unless it appears palpable injustice has been done.
State v. Whitton, 68 Mo. 91 ; State v. Guy, 69 Mo. 431 ;
State v. Bohannon, 76 Mo. 564 ; State v. Burgess, 78
Mo. 235 ; State v. Brounfield, 83 Mo. 449 ; State v.
Wisdom, 81 Mo. 177 ; State v. Wilson, 85 Mo. 130. (2) The
evidence on the part of the state, if true, proved a
dastardly, deliberate murder ; that on the part of the
accused a clear case of self-defence. The instructions
given on these two theories were correct, and the court
did not err in refusing to instruct the jury in relation
to murder in the second degree, or manslaughter in
any degree. State v. Starr, 38 Mo. 272 ; State v.
Kilgore, 70 Mo. 559 ; State v. Snell, 78 Mo. 244 ; State v.
Jones, 79 Mo. 442 ; State v. Collins, 81 Mo. 658 ; State v.
Wilson, 86 Mo. 520 ; State v. Wilson, 88 Mo. 13, 18, 19 ;
State v. Blunt, 91 Mo. 503. (3) Instructions for lower
grades of homicide are properly refused when the
evidence shows the offence to be murder in the first
degree or nothing. State v. Foster, 61 Mo. 551 ; State

*v. Green*, 66 Mo. 65. (4) The court did not err in its refusal of the instructions asked by the defendant. (5) The court did not err in excluding the alleged conversation of defendant with Merrill. It did not grow out of and was not a part of the transaction, but, if made, was only a narration of a past event. *State v. Swain*, 68 Mo. 605; *State v. Evans*, 65 Mo. 578; *Ladd v. Couzin*, 35 Mo. 516; *State v. Brown*, 64 Mo. 371; *State v. Walker*, 78 Mo. 386; Wharton's Crim. Evid. (9 Ed.) secs. 262, 270; *State v. Hicks*, 92 Mo. 436; *State v. Snell*, 78 Mo. 243. (6) The testimony of Milton Campbell, a witness for the state, that defendant overtook him and compelled him, by pointing a loaded gun at him (C.) to give him (defendant) a revolver which Campbell was carrying, is competent to show that defendant was securing additional arms with which to enter into the difficulty; especially is this true when it is shown in connection with the fact that defendant was then going with gun in hand towards the house of deceased, which was about one-fourth of a mile away, and that this occurred about thirty minutes before the killing. Whar. Crim. Evid. (9 Ed.) secs. 31, 48, 51, 753; *State v. Nugent*, 71 Mo. 140; *State v. Johnson*, 76 Mo. 123. (7) The testimony to impeach defendant as a witness was properly admitted. *State v. Palmer*, 88 Mo. 571; *State v. Rider*, 90 Mo. 54.

BRACE, J.—On the twenty-third day of July, 1885, the defendant and one Rousey P. Tallent were living in the same neighborhood in the Miami bottom of the Missouri river in Saline county about six miles from the town of Miami. Both went to the town of Miami in the morning of that day, Tallent returning home about noon and Rider, the defendant, about four o'clock in the afternoon. During their absence, a woman who is sometimes called Mrs. Moore and sometimes Mrs. Rider, in the record, who was examined as a witness by the state

without objection, but whom Rider claimed to be his wife, and with whom he had been living as such for three years previous, and by whom he had a child then about two years old, left Rider's house with her child and went to Tallent's. After Tallent ate his dinner, he rode to the river, procured a skiff, was met at the bank of the river by his wife, this woman, and another neighbor lady, and he took Mrs. Rider in the skiff across the river, leaving her on the other side. About an hour before sundown he started to re-cross the river, and returning to his home a little after dark, in a path leading to his house he was met by the defendant within a few steps of his door, by whom he was shot and killed. Rider, upon returning to his home, found his wife gone, and thereupon commenced making inquiries for her of his neighbors, satisfied himself that she had gone to Tallent's, that Tallent had gone away from home that afternoon, that she had been taken across the river, and that Tallent was the man who had taken her off.

The evidence for the state tended to prove that thereafter he armed himself with a double-barreled shotgun; afterwards procured a revolver, and about dusk proceeded towards Tallent's home for the purpose of killing him. The evidence for the defendant tended to prove that after he got the shotgun, at the house of his brother-in-law, Mr. Cockrill, he went in search of his wife, going first to the home of a Mr. Merrill, who lives but a short distance from Tallent's, and Rider, in his evidence upon the stand, gives the following account of what transpired after he got the gun: " I got me a shot-gun there and came on back ; passed Mr.' Bristoe's and went down to Mr. Merrill's, and me and Mr. Merrill went to this path leading from the river to Mr. Tallent's. When we came to that path which ran north and south, Mr. Merrill stopped and I went on in the direction of Mr. Tallent's home, and went to the south part of his house, and looked to see if 1 could learn anything about

where my wife was.    I discovered no sign of her there
and I started back north on this path leading towards
the river, that I had come up, and going down the
slough bank I met Mr. Tallent.    I spoke to Mr. Tallent
and asked him if he knew where my wife was, and he
made this remark, that 'I have taken her where you
won't find her, and God damn you, we might as well
settle this right here.'    He started at me with his axe in
a striking posish and he advanced a few feet when I
fired; I fired one time.    *    *    *    Well, after that I
started east towards Mr. Cockrill's house; I met Mr.
Merrill, came across him near his house, I reckon it was
some two or three minutes after the shot, *    *    *    some
two hundred yards may be from Merrill's house; I am
not certain of the distance, could not tell you."

At the September term, 1885, of the criminal court
of Saline county, the defendant was indicted for the
homicide and in November was tried, found guilty of
murder in the first degree, and was sentenced to be
hanged. He appealed to this court, and at the October
term, 1886, thereof the judgment was reversed and the
cause remanded.    90 Mo. 54.    At the March term, 1887,
of the criminal court, defendant's application for a
change of venue on account of the prejudice of the
inhabitants of Saline county was overruled, and in
January, 1888, he was again tried in that court, and
again found guilty of murder in the first degree, and
from the judgment and sentence then rendered, after an
unsuccessful effort for a new trial and in arrest of judg-
ment, he again appeals to this court, assigning various
errors that will be noticed in their order.

I.    On application for a change of venue the weight
of the evidence was that the defendant could have a fair
trial in Saline county, nor is the action of the court in
overruling the application urged here as error.    On

that issue, in cases even where the evidence is conflicting, the action of the trial court will be held to be conclusive unless there has been a palpable abuse of judicial discretion to the prejudice of the defendant. *State v. Hunt*, 91 Mo. 490, and cas. cit.

II. It is urged that the court erred in failing to give the jury instructions defining any degree of homicide below murder in the first degree and in giving instructions two and three as follows :

"2. The court instructs the jury that if they believe from the evidence, that, prior to the killing of Tallent, the defendant, George M. Rider, prepared and armed himself with a gun and went in search of and sought out Tallent with the intention of killing him or shooting him or doing him great bodily harm, and that he found, overtook, or intercepted Tallent while the said Tallent was on his way home from the Missouri river, in the county of Saline, and state of Missouri, and then and there did wilfully, deliberately, premeditatedly, and of his malice aforethought (as these terms are defined in the first instruction for the state), shoot at and kill Tallent, and at the time of said shooting Tallent was not then making any threats of violence against defendant and was not attempting to assault the defendant, and that defendant had no reasonable cause to apprehend immediate danger to his person from Tallent, then there is no self-defence in this case of which the defendant can avail himself and the jury should convict."

"3. Although the jury may believe from the evidence that, prior to the time he was shot, the deceased had made threats against the defendant, yet this fact alone does not justify, excuse, or palliate the offence of murder, provided the jury shall further believe from the evidence that at the time deceased was shot he made no threats against the defendant, and made no attack or assault upon defendant, and made no demonstration of violence against defendant."

The supposititious passion or phrenzy which ingenious counsel argue swept through the mind of the defendant upon suddenly beholding before him the man who had inflicted upon him an injury that had wounded his tenderest sensibilities, enhanced by the gross manner in which that man avowed and emphasized it, and which, for the moment, shook the foundations of right reason in his mind, to the extent of depriving him of that coolness and deliberation essential to a mind capable of committing murder in the first degree, is not to be found in the evidence of either the state or the defendant.  His own declarations tended to show that this woman had left him before ; that, before he ascertained certainly that she had gone again, he was entertaining the idea that she intended to go, and that he had learned that an arrangement had been made by one of his neighbors for a skiff which he suspected was to be used for that purpose, and when he found that she had gone, the evidence of the state tended to prove that he went upon the hunt, not of his wife, but for the man who had taken her off ; that he followed the trail systematically and methodically, and when it pointed to Tallent's house, and satisfied him that he was the man, he went coolly about for the next hour or two before the homicide, making his arrangements to go there, made arrangements with a young man to go to his house and milk the cows, went a distance to his brother's-in-law and armed himself with a double-barreled shotgun, taking up his course towards Tallent's house about dark. On the road he meets this same young man, from whom he procures a revolver.   He then proceeds to Merrill's, to the house of the deceased, and to the scene of the homicide.

The evidence of the defendant tended to prove that, with like knowledge and calmness of mind, he in like manner prepared himself, and went to that scene with no other feeling or motive than to find his wife, or

learn her whereabouts, and' he who alone of the living saw and knew what transpired when he and the deceased met, in giving the details of the tragedy, does not give the faintest hint that when he fired the fatal shot he was actuated by any other impulse or motive than that of defending himself from the impending danger of an unprovoked and dangerous assault then being made upon him by the deceased with a drawn axe. If that shot was the result of a sudden gust of passion, other than that arising from the assault made upon him, it certainly has left no trace upon the cool surface of the defendant's statement. As the case is presented on this record, the defendant either deliberately shot for revenge or in the necessary defence of his person from impending danger; he was either guilty of murder in the first degree, or he ought to have gone acquit. We find no error in the failure of the court to instruct on murder in the second degree or any lower grade of homicide, and none in giving the second instruction from which has been eliminated the error which was found in a similar instruction when the case was here before. It does not follow because the evidence may warrant an instruction on justifiable homicide, that there must necessarily be one given on murder in the second degree, or some lower degree of homicide. *State v. Sneed*, 91 Mo. 553; *State v. Blunt*, 91 Mo. 503; *State v. Collins*, 81 Mo. 652; *State v. Wilson*, 86 Mo. 520; *State v. Kilgore*, 70 Mo. 559.

In the third instruction the court did not undertake to lay down the law of self-defence; the law on that subject was properly and favorably declared in two instructions given for the defendant. The jury were simply told in this instruction that the homicide could not be justified by the previous threats of the deceased alone, unaccompanied by any hostile demonstrations at the time, nor can anything therein contained be fairly construed to intimate to the jury that such threats might not be considered by them for any legitimate purpose

in the case. The criticisms of counsel on this instruction are unwarranted.

III. There was no error in refusing defendant's second instruction which was upon the law of justifiable homicide, and which was fully covered by two other instructions given for the defendant in unobjectionable phraseology.

IV. There was no error in admitting the evidence of Milton Campbell, who, about dusk on the evening of the homicide, and within half an hour thereof, met the defendant with his gun, on the road, within a quarter of a mile of Tallent's house, and who testified that defendant drew his gun on him and compelled him to give him (defendant) his pistol. Deliberation and premeditation are essential elements of the crime with which the defendant was charged ; preparations beforehand of the means by which to perpetrate the homicide tend to prove the existence of these elements. The state had the right to show that the defendant armed himself in preparation for the commission of the homicide, and although in that preparation he may have committed another crime, the evidence thereof was none the less admissible, and in this case, where the pistol was procured within half an hour of the time, and within a quarter of a mile of the place where the homicide was committed, by the defendant, while on the road to that place, partially armed already for the purpose, it may be said to be but a connecting part of the entire transaction commencing with the defendant's arming himself with the shotgun and ending with the killing of the deceased, and for this reason also the evidence was admissible. *State v. Nugent,* 71 Mo. 136 ; Wharton's Crim. Evid., secs. 31, 753.

It is not perceived how the evidence of Dobyns, that deceased told him about two weeks before the homicide that he had had sexual intercourse with Mrs. Rider, could in any manner tend to prove that deceased

assaulted defendant as testified to by him. Nor do we think the court erred in refusing to permit evidence to be given of the declarations of the defendant made to Merrill a few minutes after the homicide had been committed, and after the defendant had gone two or three hundred yards in the night from the scene thereof. They were not a part of the *res gestae* and were not admissible for any purpose. *State v. Brown*, 64 Mo. 367; *State v. Walker*, 78 Mo. 380; Wharton's Crim. Evid., sec. 262 *et seq.*

The court in this, as in the former trial, after the defendant had testified as a witness in his own behalf, permitted the state to introduce evidence as to his general reputation for truth and veracity, chastity and morality. It was not held to be error then, and we see no good reason for holding so now. It is in harmony with all the rulings of this court on that subject since the adoption of the statute permitting a defendant in a criminal case to testify in his own behalf. *State v. Rider*, 90 Mo. 54. In conducting the examination of witnesses on the question of character, the court and counsel met with the usual difficulty in getting the witnesses to answer the questions properly, but, upon the whole, we find no avoidable error in the examination prejudicial to the defendant.

There was no error in the action of the court in sustaining the objection to the remark of counsel for the defendant, which, in the connection used, might be construed as a reflection in offensive terms upon the fairness of the court, and which gave no additional weight or force to the argument which that remark concluded, but to which it was superfluous.

Finding no error in the record in this case which calls for a reversal, the judgment of the criminal court is affirmed. All concur.