# THE STATE v. CHARLES SOVERN, Appellant.

### Division Two, February 12, 1910.

1. **INFORMATION: Amendment: Rearraignment: Assault With Intent to Kill.** An allegation in an information charging an assault with intent to kill, to the effect that defendant did then and there give "to Charles W. Sovern" (the defendant) "in and upon the head and body of him the said Frank W. Lander with the pistol aforesaid two wounds," etc., is immaterial and unnecessary under section 1847, Revised Statutes 1899, and hence there was no impropriety in permitting it to be amended by changing the name of Charles W. Sovern to Frank W. Lander, and hence defendant having been arraigned before the amendment it was not error to place him upon trial without rearraignment after the amendment, since the information without the said allegation charges a complete offense under the statute. It is not necessary, to establish the offense of an assault with intent to kill, to prove that wounds were inflicted. The Statute of Jeofails (Sec. 2535, R. S. 1899) may be properly invoked in such case.

2. **CONTINUANCE.** Unless it is made manifest from the disclosures of the record that the sound discretion of the trial court has been improperly, unsoundly and arbitrarily exercised, the Supreme Court will not hold that error was committed in denying defendant's application for a continuance.

3. **TESTIMONY: Former Conviction.** Proof that the prosecuting witness had formerly been convicted of a like offense cannot be made in the first instance by the testimony of a witness who had him arrested. The statute (Sec. 4680, R. S. 1899) prescribes a different method.

4. **THREATS: Instruction to Disregard.** There was evidence of threats by the prosecuting witness against defendant and his wife, such as called for an appropriate instruction on the subject, and the court instructed the jury that "the evidence of threats made by the complaining witness against the defendant was admitted in the case solely because there was evidence showing, or tending to show, that just before the complaining witness was shot, he was making or attempting to make an assault upon defendant, and if from all the facts and circumstances in evidence the jury believe that at the time, or just before defendant shot the complaining witness he was not assaulting or attempting to assault the defendant or making any hostile or apparently hostile demonstration toward defendant,

then you are instructed to disregard and not in any way con-
sider the evidence of threats made by the complaining witness
against the defendant in arriving at your verdict." *Held*, not
reversible error. *Held*, by FOX, J., dissenting, *first*, that the
instruction, especially the latter part of it, is obscure and mis-
leading; *second*, that the jury should not be told to disregard
the threats, but they should be required to consider them up
to the time of making their verdict where the real defense is
self-defense.

Appeal from Jackson Criminal Court.—*Hon. E. E.*
*Porterfield*, Judge.

AFFIRMED.

*J. M. Cole* and *Lowrance & Casey* for appellant.

(1) The court erred in overruling defendant's
application for a continuance. The application com-
plied fully with every requirement of the statutes. R.
S. 1899, sec. 2600; State v. Anderson, 96 Mo. 241;
State v. Farrow, 74 Mo. 531. (2) The court erred
in not permitting the defendant to show the threats
made against him and his wife by the prosecuting wit-
ness the same day of the difficulty. State v. Sloan,
47 Mo. 604; State v. Keene, 50 Mo. 357. (3) These
threats were admissible to show the character and
strength of the feeling which prompted them. Sher-
wood Com. on Criminal Law of Mo., pp. 14-15; State
v. Dickson, 78 Mo. 438; State v. McNally, 87 Mo. 650;
State v. Bryant, 55 Mo. 75; State v. Downs, 91 Mo.
19; State v. Foley, 12 Mo. App. 431; State v. Alexan-
der, 66 Mo. 148. (4) The court erred in sustaining
the prosecuting attorney's objection to the evidence
of L. E. Moody. This was material evidence and ad-
missible for the purpose of showing the violent and
turbulent disposition of the complaining witness, and
to affect his credibility made so by statute, R. S. 1899,
sec. 4680. State v. Blitz, 171 Mo. 530; State v. Thorn-
hill, 174 Mo. 364; State v. Spivey, 191 Mo. 111; State
v. Hensack, 189 Mo. 312. (5) The court erred in giv-

ing instruction 6 on the part of the State over the objections of the defendant. Threats made by the assaulted (or deceased as the case may be) against the defendant so near the time of the difficulty as to characterize the conduct and motive of the injured party in the rencounter may be shown as bearing upon the question whether the defendant acted in self-defense, whether said threats were communicated to the defendant or not. In case at bar these threats were all communicated to the defendant. State v. Sloan, 47 Mo. 604; State v. Keene, 50 Mo. 357; State v. Harris, 59 Mo. 550; State v. Evans, 65 Mo. 574; State v. Harrod, 102 Mo. 609.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for the State.

(1) Defendant did not complain of the information in the lower court. It is not subject to criticism, either in form or substance. It is an almost exact copy of a form heretofore approved. State v. Prosser, 137 Mo. 625; State v. Mulhall, 199 Mo. 205. (2) The information as filed, according to the transcript of it in the record proper, was in no need of the amendment alleged by the bill to have been made. (3) The statute expressly authorized the amendment of the information and provides the remedy in case of surprise. Defendant took no steps to show "good cause" for delay. Sec. 2481, R. S. 1899; State v. Emerson, 188 Mo. 413. (4) Instruction 6 to the effect that threats made by Lander against defendant should be disregarded if the jury found that when shot Lander was making no hostile, or apparently hostile, demonstrations, is sound. State v. Spencer, 160 Mo. 123; State v. Harris, 59 Mo. 552. The instruction tells the jury that if they believe that at the time the shooting occurred Lander was "not assaulting, or attempting to assault defendant, or making any hostile or apparently

hostile demonstrations,'' then the threats proved are not to be considered at all. If Lander was not making any ''hostile or apparently hostile demonstrations against defendant,'' then the defendant had no ''reasonable ground to believe'' that he was in danger, and his whole theory of self-defense crumbled. The threats were competent only in connection with the evidence tending to show self-defense. State v. Westlake, 159 Mo. 679.

FOX, J.—The defendant in this cause has brought his case to this court by appeal from a judgment of the circuit court of Jackson county, Missouri, convicting him of an assault with intent to kill one Frank W. Lander. The information as amended, which was duly verified, upon which the defendant was tried, omitting formal parts, thus charges the offense against the defendant:

''Now comes Isaac B. Kimbrell, prosecuting attorney for the State of Missouri in and for the body of the county of Jackson, and upon his oath informs the court, that Charles Sovern, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on the 6th day of March, 1908, at the county of Jackson, State of Missouri, in and upon one Frank W. Lander, feloniously, willfully, on purpose and of his malice aforethought did make an assault; and the said Charles Sovern with a certain weapon, to-wit, pistol loaded with gunpowder and leaden balls, then and there feloniously, willfully, on purpose and of his malice aforethought did shoot off at, against and upon the said Frank W. Lander then and there giving to the said Frank W. Lander in and upon the head and body of him the said Frank W. Lander with the pistol aforesaid two wounds, with the felonious intent then and there him the said Frank W. Lander, feloniously, willfully, on purpose and of his

malice aforethought to kill and murder against the peace and dignity of the State.''

During the course of the opinion we will give attention to the legal propositions suggested by counsel for appellant as to the amendment of the information and the arraignment and re-arraignment of the defendant upon the charge preferred against him.

Upon the trial of this cause the testimony introduced by the State substantially tended to prove that the defendant and one Lander, the prosecuting witness, were, at the time of the assault, and for sometime prior thereto had been, competitors in business on East Fifteenth Street, Kansas City, Missouri. They occupied adjoining buildings. On the afternoon of March 6, 1908, Lander was standing in front of his place of business engaged in conversation with an insurance agent, when defendant emerged from his store and ordered Lander to ''get away from there.'' Lander told defendant he was ''not bothering him.'' Defendant at once drew his pistol and commenced firing. Lander had made no demonstration of any kind. The first and fourth shots went wild, the second passed through the back of Lander's neck, and the third, fired while Lander was retreating, struck him in the back near the left shoulder blade, inflicting a dangerous wound. Lander was unarmed. There was also evidence tending to show that defendant, on previous occasions, had threatened to kill Lander, and that immediately before the shooting he came into his store, after passing Lander on the walk, declared that ''if he comes over on my place I will shoot him,'' procured a pistol from his desk, stepped out near where Lander was standing and, after the conversation detailed above, began firing.

The evidence on the part of the defendant tended substantially to show that the prosecuting witness had frequently, in conversation with third parties, threatened defendant's life, accompanying his threats with

opprobrious epithets. These threats were communicated to defendant. Defendant and his wife testified to numerous threats made by Lander against defendant's life in their presence. They also testified that Lander, at various times, applied indecent epithets to Mrs. Sovern. Defendant's account of the shooting is, in substance, that earlier in the day a difficulty had occurred between Lander and defendant. As a result of this and previous difficulties, defendant, after consulting his attorney, concluded to move across the street, and was engaged in moving when the shooting occurred. He had been down in the city on some errand in the afternoon, and upon his return was informed by his wife that Lander had been cursing her during his absence. Defendant procured his pistol, went out where Lander was, and told him to get off his (defendant's) place. Defendant declared that Lander responded to this by saying, "Go to hell, you Irish son-of-a-bitch," and "ran his hand in his pocket like he was going to pull a gun, and I pulled a gun and shot him." Defendant testified that the reason he shot was he thought Lander was going to shoot him. With respect to Lander's effort to draw a pistol, defendant was corroborated by his wife, and to some extent by his step-son. Defendant, when asked to explain his shooting Lander in the back, replied: "How did I know but what he was going to turn and do some more." At one point in his cross-examination, when asked why he shot Lander, he answered, "Because I didn't want him lurking around my place. I was paying rent for that place." Asked then if he shot because he "didn't want Lander lurking around his place," he replied, "He had cussed me and my wife and my whole family, and I didn't think he had any business running my business while I was down town." Defendant denied having threatened Lander. He explained a statement made shortly after the shooting, to the effect that Lander had shot at him first, by saying he was so

nervous at the time that he "hardly knew what happened."

Defendant offered evidence that Lander's general reputation for peace, quietude, honesty and veracity was bad, and that his own was good.

In rebuttal the State offered evidence to the effect that Lander's general reputation for truth and veracity, peace and quietude was good.

Other evidence in rebuttal was to the effect that defendant, at the time of making the statement referred to, just after the shooting, was under the influence of liquor. Lander denied the threats against defendant attributed to him.

The record further discloses that prior to the commencement of the trial defendant filed his application for a continuance, which was by the court overruled, to which ruling of the court proper exceptions were preserved.

At the close of the evidence the court instructed the jury upon all of the subjects to which there was any testimony applicable, and the cause was submitted to them and they returned a verdict finding the defendant guilty as charged, and assessed his punishment at imprisonment in the penitentiary for a term of three years. Timely motions for new trial and in arrest of judgment were filed, and by the court taken up and overruled. Judgment and sentence were entered in conformity to the verdict, and from this judgment the cause is brought to this court by appeal, and the record is now before us for consideration.

## OPINION.

The record in this cause discloses numerous complaints respecting the action of the trial court during the progress of the trial.

## I.

The original information, after charging defendant, Charles Sovern, with shooting at Frank W. Lander, made this allegation: "Then and there giving to the said Charles W. Sovern, in and upon the head and body of him the said Frank W. Lander with the pistol aforesaid two wounds, with the felonious intent then and there him the said Frank W. Lander, feloniously, wilfully, on purpose and of his malice aforethought to kill and murder against the peace and dignity of the State." This information, over the objections of learned counsel for appellant, was, upon the application of the prosecuting attorney, amended by striking out the name of Charles W. Sovern, following the words, "then and there giving to the said," and inserting in lieu thereof the name of the party charged to have been assaulted, Frank W. Lander, which allegation, as amended, was as follows: "Then and there giving to the said Frank W. Lander in and upon the head and body of him the said Frank W. Lander with the pistol aforesaid two wounds, with the felonious intent then and there him the said Frank W. Lander feloniously, willfully, on purpose and of his malice aforethought to kill and murder against the peace and dignity of the State."

The record also discloses that the defendant was duly arraigned upon the original information and entered a plea of not guilty. He was tried upon the amended information without any further re-arraignment.

It is insisted, upon this state of the record, that it was essential to rearraign the defendant upon the information as amended, in the manner as heretofore indicated, and the record failing to disclose any arraignment of the defendant upon the amended information this constitutes such error as calls for the reversal of the judgment in this cause. After a most careful

consideration of this proposition we are unable to give our assent to the contention of learned counsel for appellant.

The offense charged in this information is predicated upon section 1847, Revised Statutes 1899, and the defendant was charged, under the provisions of that section, with an assault with intent to kill by shooting at said Frank W. Lander with a pistol. This section, so far as applicable to the offense charged in this information, provides: "Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill . . . . shall be punished by imprisonment in the penitentiary not exceeding ten years." This section of the statute has substantially been in its present form since 1835. It must not be overlooked that the offense with which the defendant is charged by the information is not for any felonious wounding or maiming of Frank W. Lander, but is a charge of shooting off a loaded pistol at, against and upon the said Frank W. Lander "with the felonious intent then and there him the said Frank W. Lander, feloniously, wilfully, on purpose and of his malice aforethought to kill and murder." Manifestly under the provisions of that statute charging the defendant with the commission of an offense of which he was convicted, it was not essential to make any allegation whatever respecting the infliction of any wounds upon Frank W. Lander, and the error or mistake to which our attention has been directed in the original information, which was amended, has reference to the infliction of wounds; hence we take it that, first, there was no necessity for amending the original information, for the reason that the allegation respecting the name of the party to whom the wounds were given, was immaterial, and may be treated as surplusage, and so treating it the allegations in the informa-

tion remaining were fully sufficient to cover every essential element constituting the offense of which defendant was charged. Second, it being an immaterial matter there was no impropriety, with the view of correcting a mistake in the name, in permitting the amendment to be made; and third, there was no necessity for any rearraignment under the information as amended.

It is clear that the allegations in the information to which reference has heretofore been made respecting the infliction of the wounds, may be carved out of the information and yet the remaining allegations would charge a complete offense under the provisions of section 1847, Revised Statutes 1899, for assault with intent to kill. This being true, in disposing of the immaterial and erroneous allegation respecting the infliction of the wounds, we can very appropriately call to our aid the Statute of Jeofails, which expressly provides that "no indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected . . . . for any surplusage or repugnant allegations, when there is sufficient matter alleged to indicate the crime and person charged; nor for want of the averment of any matter not necessary to be proved . . . . nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." [Sec. 2535, R. S. 1899.]

Upon the trial of this cause there was no necessity, in order to establish the guilt of the defendant of an assault with intent to kill, to prove that wounds were inflicted at all. The offense of which the defendant was tried and convicted was entirely complete when it appeared that he shot Frank W. Lander with the intent to kill him.

We see no necessity for discussing this subject further. The learned Attorney-General has furnished for our consideration a very able and exhaustive brief

upon this proposition, and the numerous cases cited fully support the contentions of the State upon this question. Upon an examination of the adjudications in this State applicable to the question now under consideration, we find by a long line of decisions, all of which are cited in the brief of the Attorney-General, that many indictments and informations predicated upon the same section as the information in the case at bar, and containing no clause relative to the infliction of wounds, have been expressly approved by this court, commencing with the case of State v. Vaughn, in the 26th Mo. l. c. 30, followed by some fifteen or twenty cases approving the same sort of pleading, ending with the very recent cases of State v. Bartlett and State v. Harris in the 209th Mo.

While it is true that there are a number of cases which contain the allegation as to the infliction of wounds which have also met the approval of this court, the conclusions reached in those cases as to the sufficiency of the information were not predicated upon the theory that an allegation as to the wounding was essential in order to constitute a valid charge of an assault with intent to kill under the provisions of the statute as herein indicated.

## II.

Appellant complains at the action of the court in denying his applications for a continuance. We have carefully considered in detail the averments embraced in those applications. In our opinion there was no error in denying the requests therein made. The granting of continuances by the trial court must necessarily rest to some extent with the sound discretion of such trial court, and unless it is made manifest from the disclosures of the record that such discretion has been improperly, unsoundly or arbitrarily exercised this court will decline to interfere with the action of

the trial court upon that subject. [State v. Day, 100 Mo. 242; State v. Cochran, 147 Mo. 504; State v. Burns, 148 Mo. 167; State v. Fleetwood, 223 Mo. 69.

### III.

It is next contended by learned counsel for appellant that the court committed error in its action excluding evidence offered by the defendant. Upon this proposition our attention is directed to the evidence offered by witness L. E. Moody. The inquiry was made of this witness about his having had the prosecuting witness fined two or three times. The witness was proceeding to answer the inquiry and stated that he had him fined two times. Another question was propounded, "Was it for an assault on you?" The answer to that question was, "An assault; yes, sir, once. That is him and his girl there together—this one right here (indicating)." Then the additional question was propounded, "He tried to kill you did he?" The State interposed an objection to this line of examination of this witness and the objection was sustained, and in our opinion properly so.

While under the provisions of section 4680, Revised Statutes 1899, it may be shown that a witness testifying in a cause, for the purpose of affecting his credibility and the weight to be attached to his testimony, has been convicted of some criminal offense, yet the proof of the conviction of such witness of some criminal offense must be by competent evidence, which is such evidence as is recognized by the law as being sufficient to establish the fact that the witness had been convicted. Section 4680, which provides for the introduction of evidence of that character, makes the suggestion that the inquiry may be made of the witness testifying as to his previous convictions of criminal offenses; if the witness should deny it, under the provisions of the statute it would not be binding upon the party making the inquiry, but resort could then be

had to the only legitimate proof of the conviction of the witness, that is, the record of the court or docket of the justice of the peace showing that the witness had in fact been convicted. Manifestly the evidence as offered by witness Moody, stating in a general way that the prosecuting witness had been fined two or three times, was not a method of proof of such fact recognized by the well-settled rules of evidence, hence it follows that there was no error in the court excluding it.

Complaint is also made in this cause by counsel for appellant that the court erroneously and improperly excluded evidence of threats made against the defendant by the prosecuting witness on the day of the difficulty and recently prior thereto. We have carefully analyzed in detail the record concerning the action of the court in the admission and rejection of testimony and from such examinations we are unable to agree with counsel for appellant that the court excluded evidence of threats against the defendant offered in evidence. Learned counsel direct our attention to the pages of the record, where, it is asserted, the error complained of respecting the exclusion of evidence will be found. On page 139, the first objection to which our attention is directed, is where the defendant undertook to relate what his wife had stated. In other words, he was proceeding to state before the jury, "I went in and says, 'What is going on?' She says, 'What do you think, I told Lander to get off the place—.' " The prosecuting attorney objected to what his wife told him. This objection was sustained. The next objection by the prosecuting attorney was upon the same page of the record referred to. This objection was to the form of the question propounded to the defendant as a witness; he had been testifying and then followed this question: "Q. You had been told—" Before the counsel fully completed his question the prosecuting attorney interposed an objection

to the form of the question as being leading and suggestive. This objection was also sustained. Another question propounded by counsel was, "Q. And your wife had told you? A. My wife had told me to look out for him. They then told me he had drawn a gun on her." The prosecuting attorney interposed an objection in this form: "We object to that and ask to have it stricken out. The Court: Stricken out." Clearly the objection interposed by the prosecuting officer had reference simply to the statement that they had told the defendant the prosecuting witness had drawn a gun on her. We repeat, that the exclusions of the evidence by the court as indicated by the record do not constitute such error as would warrant this court in reversing the judgment.

Our attention is next directed to pages 186 and 187 of the record disclosing the action of the court concerning the admission and exclusion of certain evidence tendered by the defendant. The record discloses that Charles Sovern testified as a witness in behalf of the defendant. He answered fully a number of questions, testifying to threats made by the prosecuting witness against the defendant, and there was no objection made to the questions and answers and the court did not undertake to exclude them. Finally this question was propounded to him and he gave answer to it: "Q. They had been quarreling—I mean he had been quarreling at Mr. Sovern and making threats ever since he has moved out there? A. Ever since he had been in that building. Making threats at my mother, too. He had a gun in his hand one day—" Before this witness had completed the last sentence, wherein he stated "he had a gun in his hand one day," the prosecuting attorney interposed an objection in this form: "We object to any voluntary information on the part of this witness." The record discloses that the objection was sustained, defendant preserving his

exceptions. It will be observed that this witness had testified to numerous threats in answer to questions propounded to him and there was no objection, nor did the court exclude any of his answers testifying to such threats. Manifestly the objection to any voluntary information by the witness which the court sustained had reference to that part of the question in which the witness, after answering the question, started to relate something about the prosecuting witness having a gun one day. While it is true the record is not entirely satisfactory upon that question—it is not clear and certain what information the court had reference to — yet in our opinion it is sufficiently indicated that the exclusion had reference not to the numerous threats that had been testified to by the witness, but to the concluding sentence of his testimony in which he started to relate about the prosecuting witness having a gun one day. The burden to show the error in the action of the court rests upon the appellant, therefore we take it that even though the record presents some uncertainty, yet this court would not be authorized in convicting the trial court of the commission of error unless it is plainly disclosed by the record.

After a most careful examination of the record we are clearly of the opinion that the court did not exclude, nor undertake to do so, any of the threatss made by the prosecuting witness against the defendant. The action of the court in excluding testimony manifestly had reference to certain questions, such as what his wife had said and about the prosecuting witness having a gun. This, in our opinion, falls far short of a sufficient showing of error in the admission or rejection of evidence to authorize the reversal of this judgment.

## IV.

This brings us to the consideration of the most serious proposition involved in the record before us; that is, the challenge upon the part of the appellant directed to the correctness of instruction numbered six. That instruction is as follows:

"The court instructs the jury that the evidence of threats made by the complaining witness, Frank W. Lander, against the defendant, Charles Sovern, was admitted in the case solely because there was evidence showing, or tending to show, that just before the complaining witness, Frank W. Lander, was shot, he was making, or attempting to make, an assault upon the defendant, and if from all the facts and circumstances in evidence the jury believe that at the time, or just before defendant shot the complaining witness, Frank W. Lander, the said Frank W. Lander was not assaulting or attempting to assault the defendant or making any hostile or apparently hostile demonstration toward the defendant, then you are instructed to disregard and not in any way consider the evidence of threats made by the complaining witness, Frank W. Lander, against the defendant in arriving at your verdict."

Directing our attention to the earnest insistence on the part of the appellant that this instruction does not correctly state the law, it is not out of place to state at the very inception of the consideration of this legal proposition that the evidence in the trial court fully warranted and in fact called for an appropriate instruction upon the subject of threats by the prosecuting witness against the defendant. There is no dispute about the question but what there was sufficient evidence of threats to justify the court to treat of that subject in its declarations of law to the jury. This much is practically conceded by both counsel for the respondent and the appellant, hence the only ques-

tion confronting us respecting instruction numbered 6, as herein indicated, is as to whether or not it appropriately and correctly presented that subject to the jury. The law is well settled in this State upon the proposition as to when threats are admissible and for what purpose. This rule, in accordance with the uniform expressions by this court when dealing with that subject, may thus be briefly stated: Uncommunicated threats by the party injured, where there is any conflict in the testimony as to who was the aggressor at the inception of the difficulty, are always admissible as explanatory of the acts and conduct of the injured party making such threats, as well as tending to prove who was in fact the aggressor in the commencement of the difficulty. For such purpose such uncommunicated threats are admissible and entitled to be considered by the jury. Threats on the part of the injured party against the defendant, if shown to have been communicated to the defendant, where there is any conflict in the testimony as to the action of the parties at the time of the fatal difficulty, are always admissible for a two-fold purpose. First, if the defense interposed is that of self-defense, of determining the question of the reasonable grounds of apprehension of danger on the part of the defendant at the time he struck the fatal blow. Second, for the same purpose as uncommunicated threats, that is, in explanation of the conduct of the parties at the time of the fatal difficulty, and throwing light upon the inquiry as to who was in fact the aggressor at the commencement of the difficulty. This rule is so firmly established in the jurisprudence of this State that we deem it unnecessary to cite authorities in support of it.

There are other questions applicable to the subject of threats that are equally well settled by the rules of law announced by this court touching that subject. Evidence of threats in cases of the character of the

one at bar and other cases of similar character, is
not admissible to justify an assault or killing of the
party assaulted, and they do not in any way palliate,
justify or excuse a defendant in assaulting or killing
his adversary if at the time of the difficulty his an-
tagonist was making no attack or assault upon such
defendant, and was making no demonstration of vio-
lence toward him.  In other words, threats alone are
not admissible in the absence of any testimony re-
quiring explanation of the acts and conduct of the
parties upon the question as to who was the aggres-
sor, and in the absence of any testimony whatever
tending to show that such threats were going to be
carried into execution.    [State v. Rider, 95 Mo. 474;
State v. Eaton, 75 Mo. 586; State v. Alexander, 66
Mo. l. c. 161-162; State v. Sloan, 47 Mo. 604; State v.
Westlake, 159 Mo. 669.]

In State v. Eaton, supra, it was expressly ruled
by this court that ''the person threatened has no right
to take the life of the other, unless that other, when
they meet, by his conduct manifests a purpose to carry
the threat into execution; but such purpose may be
manifested by conduct falling short of personal vio-
lence or an actual assault.''

In State v. Sloan, supra, it was said by this court
that threats were admissible in evidence, not to justify
or exculpate the slaying, if it should be found that
the defendant was the assailant, but as circumstances
to explain the act and show whether the defendant
acted in necessary self-defense.

Instruction numbered 6 in the case at bar, now
under consideration, was manifestly copied from the
instruction disclosed by the record in State v. Spencer,
160 Mo. 118, and it was held in that case that the
instruction was not erroneous.  Speaking for myself,
I fully concur in the conclusions by this court in the
Spencer case, and the affirmance of the judgment in
that case was manifestly proper; however, I am un-

able to give my assent to the approval of that instruction. Upon the facts disclosed by the record in the Spencer case there was no necessity for any instruction upon the subject of threats at all; in fact, upon that record the trial court would have been fully warranted in excluding any threats offered by the defendant upon the trial. It was said in that case that "the evidence on both sides clearly shows that the defendant deliberately sought the deceased; that deceased was making no effort to execute any threat previously made, if indeed he made any such, and did not seek the difficulty with defendant, but endeavored to avoid it, and was not the aggressor. Under such circumstances the threats, if any, did not palliate or excuse the homicide." Upon that state of the record, even though the instruction did not clearly present the law upon the subject of threats, the defendant was not in a position to complain for the reason that there was no substantial evidence which authorized the introduction of any evidence of threats, and as before stated, the court would have been fully warranted in declining to instruct upon that subject. But in a case like the one at bar, where there is substantial testimony as to threats having been previously made, not only against the defendant, but also as against his wife, I am of the opinion that the instruction is somewhat obscure, and the language employed in its form calculated to mislead the jury. Clearly no complaint could be lodged against such instruction in this case had the law been declared in harmony with the interpretation of the instruction in State v. Spencer. It was there said, concerning this instruction, that "we think it plainly tells the jury that notwithstanding they may believe deceased made the threats imputed to him by defendant and his witnesses, yet, if from the facts and circumstances in evidence, including necessarily the threats which were in evidence under the sanction of the court, the jury believe that

at the time or just before defendant shot the deceased, the deceased was not assaulting or attempting to assault defendant and was not making any hostile demonstration or apparently hostile demonstration toward defendant, then such threats afforded defendant no justification for killing deceased."

With the highest respect for the views of the learned judge who wrote the opinion in that case and those who concurred, in my opinion the instruction is not susceptible of the interpretation by this court as herein indicated. In harmony with the language used in the interpretation of the Spencer case, had the instruction in this case directed the jury to include the evidence of threats in their consideration of the question as to the acts and conduct of the prosecuting witness at the time of the difficulty, followed with the direction that if they found that he was making no hostile demonstration toward the defendant at that time, such threats would afford defendant no justification for such assault, then the misleading features would be absent and the law clearly and correctly declared. It will be observed that the instruction made no reference whatever as to what the jury might believe and find concerning the threats, nor does it intimate, except impliedly, that the threats were to be included in their consideration in the preliminary inquiry suggested by the instruction.

An instruction of substantially the same character as the one now under discussion was in judgment before this court in State v. Rider, 90 Mo. l. c. 59. One of the instructions was as follows: "The court instructs the jury, that if they believe from the evidence that prior to the killing of the deceased, the defendant prepared and armed himself with a gun, and went in search of, and sought out, deceased, with the intention of killing him, or shooting him, or doing him some great bodily harm, and that he did find, overtake, or intercept, deceased, and did shoot and

kill deceased while he was returning from the river
to his home, then it makes no difference who com-
menced the assault, and the jury shall not acquit the
defendant; and the jury are further instructed that
in such case they shall disregard any and all testimony
tending to show that the character or reputation of
deceased for turbulency, violence, peace and quiet was
bad, and they shall further disregard any and all evi-
dence of threats made by deceased against the defend-
ant.'' Instruction numbered .3, which is referred to
in the opinion in that case, was, as shown by an ex-
amination of the. files, one defining murder by lying
in wait, and the concluding portion of the instruction
·was as follows: ''And if the jury find from the evi-
dence that the defendant shot and killed the said
Tallent as above stated then they are instructed to
disregard any and all evidence to show that the gen-
eral reputation of said Tallent was bad for turbulence,
peace and quiet, and in such case the jury are also
instructed to disregard any and all evidence tending
to show that Tallent had made threats against defend-
ant.'' Discussing these instructions, this court, speak-
ing through Judge HENRY, said: ''There was evidence
of threats made by the deceased against the accused,
and also of the turbulent and quarrelsome character
of the deceased, and so much of the above, and of the
third instruction given for the State, as relates to
those matters, is a little obscure. The jury had a right
to consider the threats made by the deceased and his
character as a turbulent, ·dangerous man in determin-
ing the question as to who was the assailant, he or
the defendant, and whether defendant had reasonable
ground to apprehend, and did apprehend, that he was
in imminent danger of sustaining great bodily harm
at the hands of the deceased. It is not clear whether
the instructions direct the jury to disregard that evi-
dence in determining the other question, or, after hav-
ing given them due consideration, they find the other

facts against him. If the latter they are unobjectionable, but, on a retrial, they should be more precise.''

It will be noted that in that case, as in the case at bar, threats were admitted in evidence, and the same reason could be assigned as in the Spencer case, that the threats were at least impliedly included in the instruction for consideration by the jury, yet it was held that the instruction was obscure, hence not clear upon the subject. A careful analysis of the instruction in the Spencer case and the instruction in the Rider case demonstrates that while the same language is not employed in treating of the subject of threats, yet it is clear that they substantially present the subject of threats in the same manner; hence, the criticism indulged by the court in the Rider case is equally applicable to the case at bar.

This instruction now under consideration is obscure for the reason that it does not plainly direct the jury that such threats may be taken into consideration in determining who was the aggressor at the commencement of the difficulty, as well as the question of the reasonable apprehension of danger on the part of the defendant at the time the difficulty occurred. While it is true the instruction does say to the jury that the evidence of threats was admitted on the ground that there was evidence showing, or tending to show, that just before the complaining witness, Frank W. Lander, was shot, he was making or attempting to make, an assault upon the defendant, but that is followed by a declaration to the jury that ''if from all the facts and circumstances in evidence the jury believe that at the time, or just before defendant shot the complaining witness, Frank W. Lander, the said Frank W. Lander was not assaulting or attempting to assault the defendant or making any hostile or apparently hostile demonstration toward the defendant, then you are instructed to disregard and not in any way consider the evidence of threats made

by the complaining witness, Frank W. Lander, against the defendant in arriving at your verdict.''

It will be observed that there is an entire absence of any direction to the jury to consider the threats in evidence in connection with the facts and circumstances detailed in evidence concerning the acts and conduct of the prosecuting witness at the time of the difficulty; hence, the instruction in that particular is somewhat obscure for the reason that it is not clear that the court intended, or the jury so understood the directions of the court, to include the consideration of the evidence of threats in determining whether or not the prosecuting witness was the aggressor. The misleading feature of this instruction is finally emphasized by the concluding portion of it where the jury is told that ''if from all the facts and circumstances in evidence the jury believe that at the time, or just before defendant shot the complaining witness, Frank W. Lander, the said Frank W. Lander was not assaulting or attempting to assault the defendant or making any hostile or apparently hostile demonstration toward the defendant, then you are instructed to disregard and not in any way consider the evidence of threats made by the complaining witness, Frank W. Lander, against the defendant in arriving at your verdict.''

It will be noted, as heretofore indicated, that the jury had never been told to regard the evidence of threats or to in any way consider such evidence, and if the court contemplated by the direction in the instruction that the jury should, in the preliminary inquiry submitted to them, consider the threats, then the direction should have been that if they found that the prosecuting witness was not the aggressor, and was making no assault or hostile demonstration toward the defendant, then they should no longer regard such threats or give them any further consideration as evidence in the cause. In other words, such in-

struction is obscure in that it may be interpreted that while the threats were admitted in evidence, yet the consideration of them by the jury for any purpose was dependent upon the finding of the jury as to who was the aggressor at the commencement of the difficulty. Again, we repeat, that the jury were not directed to include the evidence of threats in their consideration of the facts and circumstances, but that the threats were there, and their consideration was dependent upon the finding of the jury as to who was the aggressor at the commencement of the difficulty. In other words, if you find that the prosecuting witness, Frank W. Lander, was not assaulting or attempting to assault the defendant, or making any hostile demonstration toward him, then you are instructed to disregard and not in any way consider the evidence of threats, but if you find that he was the aggressor and making hostile demonstrations toward the defendant, you will regard the threats and take them into consideration in arriving at your verdict.

The defense in this case was that of self-defense. The facts and circumstances as well as the threats in evidence touching such defense were before the jury from the time of their introduction, and were fully entitled to their consideration until the final conclusion was reached. While it is true that threats alone do not and should not justify, palliate or extenuate an assault upon or the killing of an individual, and the jury should be so directed, but when a proper showing is made which warrants the admission of threats, whether communicated or uncommunicated, in my opinion, the court should properly direct the jury as to the purposes for which such evidence may be considered, and require them to regard and consider such evidence until a final conclusion is reached upon the defense interposed and a verdict arrived at upon the issues presented.

The defense in this case was that of self-defense,

and the evidence of threats, as well as the other facts and circumstances which tended to establish such defense, were entitled to the consideration of the jury until their final conclusion was reached upon the issue presented. The main issue was that embraced in defendant's plea of self-defense; in fact, as to whether the defendant would be found guilty or acquitted of the charge against him was dependent upon the final conclusion reached by the jury upon that defense. Their verdict as returned is nothing more than giving expression to the conclusions reached upon the evidence before them upon the issues presented; hence, in my opinion, when the evidence of threats is competent and is admitted, such threats, as well as all the other facts, are entitled to the consideration of the jury until their final conclusion is reached, or in other words, should be considered in arriving at their verdict. It was misleading to direct the jury at any stage of the case to disregard and not in any way consider the evidence of threats in arriving at their verdict. Manifestly it is in arriving at the final conclusion or the verdict to be rendered giving expression to such final conclusions that the jury, in order to reach a correct conclusion, would naturally look to all the testimony upon which their verdict was to be predicated, and fully consider such testimony in arriving at their verdict.

If the instruction now under consideration had directed the jury that if from all the facts and circumstances in evidence they believed that at the time or just before the defendant shot the complaining witness, Frank W. Lander, said Frank W. Lander was not assaulting or attempting to assault the defendant or making any hostile or apparently hostile demonstration toward him, then you are instructed that the threats by the prosecuting witness against the defendant, introduced in evidence for your consideration, afford defendant no justification in making the assault

upon the prosecuting witness, nor do they tend to palliate or extenuate the commission of such assault, then the obscurity in presenting this subject to the jury, as well as the misleading features of the instruction in its present form would be entirely relieved.

In my opinion, where self-defense is interposed as a defense to the accusation, when evidence of prior threats by the prosecuting witness or the deceased are admissible and received in evidence then there should be no stages at which such evidence of threats are not to be considered or at which they are to be disregarded and in no way considered by the jury, and while such threats alone, as heretofore stated, would not justify the commission of an assault or the killing of an individual, or in any way palliate or extenuate the commission of the offense, yet such evidence is before the jury until they reach a final conclusion upon the defense interposed and arrive at their verdict, and the jury should not be told to disregard and not to in any way consider such evidence of threats.

In State v. Shadwell, 26 Mont. 1. c. 54, there was evidence admitted by the trial court of prior threats made against the defendant. Upon such evidence of threats the following instruction was predicated: "The court instructs the jury that no threats or menaces made by the deceased, O'Connor, against the defendant, Shadwell, can avail the defendant unless he, at the time of the killing, was actually assailed, or had sufficient evidence to convince any reasonable person that he was in danger of incurring great bodily injury or of losing his life at the hands of the deceased. Whatever threats may have been made by the deceased, they cannot be of avail to the defendant, unless at the time of the killing something was done that would induce a reasonable man to suppose he was in danger of great bodily harm or of losing his life. All

antecedent threats are dependent upon the facts at the time of the killing, and, in order to justify the homicide, it must appear that at the time of the killing there was some action which would induce a reasonable man to believe that he was in danger of great bodily harm or of losing his life." It will be noted that in that instruction the court did not direct the jury to take into consideration the threats introduced, in connection with other facts and circumstances in determining the question as to whether the defendant was actually assailed or had sufficient evidence to convince any reasonable person that he was in danger of incurring great bodily injury or of losing his life at the hands of the deceased, and it may be that the court contemplated that the jury in making such preliminary inquiry, before the consideration of the prior threats, should take into consideration the evidence concerning such threats; however, the appellate court held that that instruction was erroneous and interpreted it to mean a direction to the jury to disregard all prior threats of the decedent against the defendant, unless something was done or some action taken by the decedent which would induce a reasonable man to believe himself in danger of great bodily harm or of losing his life, and that the conduct of the decedent at the time of the killing must of itself and independently of the antecedent threats have been sufficient to convince a reasonable person that he was in danger of great bodily harm or of losing his life at the hands of the decedent. In other words, that the prior threats of the decedent were not to be considered unless and until the evidence disclosed that the homicide was committed in necessary self-defense.

A similar ruling was made by the Supreme Court of Mississippi treating substantially of a similar instruction to the one now under consideration. [Johnson v. State, 66 Miss. l. c. 190.] To the same effect is Pridgen v. State, 31 Texas Reports 420, where it was

held that if the defendant aside from any threats "must first prove that his antagonist manifested a hostile purpose by acts done at the time of the homicide, it would seem that antecedent threats of violence could be of no avail, because these acts of themselves would excuse, extenuate, or justify, according to their nature or grade. Thus the whole object of the law in acquainting the jury with previous threats would be defeated."

Our attention is directed to the case of State v. Rider, 95 Mo. 484, as supporting the contention of the State upon the correctness of the instruction now under consideration. That instruction clearly and correctly presented the law upon the subject of threats. The jury were directed in that case that although deceased had made threats against the defendant, that alone would not palliate, justify or excuse defendant, if at the time the defendant shot deceased deceased was making no assault or attack upon defendant and was making no demonstration of violence toward him. There is absolutely no obscurity in that instruction respecting the duty of the jury in the consideration of such threats, nor does it undertake to designate any particular time when such threats should be disregarded and not in any way considered by the jury in arriving at their verdict. This court, emphasizing the fact that the jury were in no way misled about the consideration of threats, said concerning that instruction: "Nor can anything therein contained be fairly construed to intimate to the jury that such threats might not be considered by them for any legitimate purpose in the case."

Our attention is also directed to the case of State v. Westlake, 159 Mo. l. c. 679. An examination of that case will demonstrate that it does not in any way support the contention as to the correctness of the instruction now under consideration. In the Westlake case the trial court refused an instruction upon the

subject of threats, and timely objections and exceptions were preserved to the action of the court in that respect, and this court in the discussion of that proposition, speaking through Judge BURGESS, said: "We are unable to conceive under the facts disclosed by the record, how the defendant could have been prejudiced by the refusal of this instruction," and then proceeded to detail the facts, which clearly indicated that there was no evidence upon which to predicate an instruction of that character.

Recurring to the case of State v. Spencer, we repeat, that the final conclusions reached in that case were manifestly proper, and the court would have been clearly warranted in declining to instruct at all upon the subject of threats. The disclosures of the evidence as contained in the record, by no means warranted an instruction upon that subject. Doubtless the learned judge, with a record before him that did not warrant any instruction at all, did not critically undertake to analyze the instruction given, but simply felt that upon the record in that case it was harmless, and therefore concluded that it was not erroneous, and in fact in that case it did not constitute any error of which the defendant had a right to complain.

I have indicated my views upon the propositions disclosed by the record in this cause, and I am unable to reach any other conclusion than that the instruction numbered six, complained of in this case, is, as was said by this court in State v. Rider, supra, a little obscure, and leaves it somewhat in doubt as to whether the court by that instruction intended that the jury should first find, upon the preliminary inquiry, who was the first aggressor, or whether or not the prosecuting witness was making any demonstrations toward the defendant before they should take into consideration the threats introduced in evidence. If a little obscure in the Rider case to the trained legal

mind, manifestly it would be more so to those who had had no experience or training along the line of interpreting declarations of law.

As before stated, paragraph four is the expression of the views of the writer upon the proposition therein discussed; however, my associates do not concur in that paragraph; therefore I shall simply announce the conclusion of the majority of this division of the court, that is, that the judgment should be affirmed.

*Gantt, P. J.*, and *Burgess, J.*, concur in paragraphs 1, 2, and 3, but dissent as to paragraph 4; *Fox, J.*, dissents from the conclusions reached in this cause that the judgment should be affirmed.