THE STATE v. SARAH ELIZABETH TRAINER, Appellant.—80 S. W. (2d) 131.

Division Two, March 5, 1935.

W. B. Raez, Maurice P. Murphy and Joseph H. Allen for appellant.

*Roy McKittrick*, Attorney General, and *Wm. W. Barnes*, Assistant Attorney General, for respondent.

COOLEY, C.—By indictment returned in the Circuit Court of Buchanan County defendant was charged with murder in the first degree for having shot and killed Cora B. Jones. Upon trial she was convicted of murder in the second degree and her punishment was assessed by the jury at fifteen years' imprisonment in the penitentiary. From sentence and judgment on the verdict she appealed.

The homicide occurred in the street near Stearn's grocery store in St. Joseph at about 6:30 P. M., December 17, 1932. Forrest Trainer, son of defendant, and his wife, Edith, had gone to the store to buy some groceries. Forrest owed a bill there. He was then without money or employment and Mr. Stearn declined to extend further credit unless something was paid on the bill. At Forrest's request his wife telephoned Fred Trainer, Forrest's father, to come to the store and soon thereafter he arrived, coming with Cora B. Jones, the deceased, in her automobile, which she parked at the curb. Fred Trainer was defendant's ex-husband, they having been divorced a year or so previously. They had separated several years prior to the divorce and from the time of the separation Fred Trainer

had roomed and boarded at the home of Cora B. Jones and her husband. Defendant believed that Mrs. Jones had alienated Mr. Trainer's affections and had caused him to leave her. Mrs. Jones knew that defendant so believed and the feeling between the two women was anything but cordial. Forrest Trainer's feeling toward his father seems also to have been somewhat bitter, at least on this occasion. When Fred Trainer arrived he and Forrest got into an argument over payment of the grocery bill, Forrest insisting that his father pay it and that he had agreed to do so. The argument became heated. At one time Fred Trainer started to get back into the car in which he had come and was prevented by Forrest, who said that since he had to walk his father should walk also. The State's evidence is to the effect that Mrs. Jones was attempting to get Fred Trainer away from Forrest and into the car or to assist Fred in so doing when the defendant, who had not been present when the quarreling began, appeared on the scene, walked up close to Mrs. Jones and shot her, saying to her as she fired "You will never break up another home," or some such words. The bullet entered deceased's right eye and passed through her head. She died the next night. The State's evidence clearly makes a case of murder.

Defendant claimed self-defense. In brief her evidence tended to show that Mrs. Jones had injected herself into the argument between father and son and had assaulted and beaten Forrest with an automobile crank or iron bar of some kind; that while that was going on Edith Trainer had sent defendant an urgent telephone message to "come quick, they are killing Forrest down here;" that in response to such message she hurried from her home a few blocks away to the scene of the difficulty, accompanied or immediately followed by Mr. George C. Henderson, who roomed at her house; that when she arrived Mrs. Jones was striking Forrest with the automobile crank or iron bar; that she snatched a pistol from the pocket of Mr. Henderson's coat; that Mrs. Jones told her to keep out of this or she would get her. Defendant herself testified that just before she fired Mrs. Jones "raised her hand and said she would kill me and had something in her hand." Defendant offered evidence also that on several occasions Mrs. Jones had made threats to kill defendant, some of which had been communicated to her.

I. Appellant makes a number of assignments of error. We will notice such as are sufficiently preserved in the motion for new trial.

■ It is first contended that the court erred in permitting the State to cross-examine defendant and her witnesses, Henderson and Forrest Trainer, about statements made by them at the police station after their arrest on the night of the shooting. It appears that defendant, Forrest Trainer and Henderson were all arrested immediately after the shooting on a charge of felonious assault, Mrs. Jones

being then still alive, and were taken to the police station where they were questioned by the officers. They made some statements contradictory of their testimony at the trial and were cross-examined about those statements. Defendant's point seems to be that because they were under arrest, did not have counsel and were not advised by the officers "of their legal rights," it was not permissible to cross-examine them as to the statements they had made. Forrest Trainer was not cross-examined as to statements made to the police. Witness Henderson and defendant were asked on cross-examination if they had made certain statements to the police contradictory of their testimony at the trial. Both testified that they did not remember what they had told the police. In rebuttal the State called the police officers and proved by them that such statements had been made. Appellant complains also of the admission of the officers' testimony. Of all this it is sufficient to say that no objections were offered to the questions so propounded to defendant and Henderson, nor to the rebuttal testimony of the officers, except that as to two or three questions put to one officer defendant objected on the ground that the witness sought to be contradicted had not been asked about that particular statement,—a ground of objection disproved by the record. Those objections were properly overruled.

In this connection appellant says in her motion for new trial that she orally requested the court, at the close of the case, to give the jury a cautionary instruction explaining that such rebuttal testimony of the officers was introduced and should be considered only for the purpose of impeachment. The bill of exceptions does not show that such oral request was made or that defendant requested such or any instructions. The statement in the motion for new trial that such request was made does not prove itself. [State v. Tummons (Mo.), 34 S. W. (2d) 122, 124 (5, 6).] The statute, Section 3681, Revised Statutes 1929 (4 Mo. Stat. Ann., p. 3227), does not require the court, without request, to instruct on a collateral matter of this kind. Its failure to do so was not error. [State v. Preslar, 318 Mo. 679, 685, 300 S. W. 687, 690 (2).]

II. It is asserted in the motion for new trial that the verdict, as to the punishment assessed, was a "quotient verdict," arrived at by having each juror state the number of years' imprisonment he thought should be assessed and dividing the sum of the numbers so suggested by twelve. There is nothing in the record to show or suggest that such course was pursued. The assertion in the motion for new trial does not prove itself. [State v. Stogsdill, 324 Mo. 105, 129, 23 S. W. (2d) 22, 31; State v. Tummons, supra.]

III. Appellant complains of Instruction No. 5, reading as follows: "You are instructed that you will take into consideration

the evidence as to threats made by the deceased against the defendant prior to the killing. If you believe any such threats were made by the deceased, then such threat or threats may be considered by you as explaining the conduct and apprehension, if any, of the defendant at the time of the shooting and also for explaining the conduct and demeanor of the deceased at the time of the shooting. If you believe that any threats were made by the deceased against the defendant but that such threats were not communicated to the defendant before the shooting you will consider such uncommunicated threats for the purpose of explaining the conduct and demeanor of the deceased at the time of the shooting.

Previous threats or acts of hostility against the defendant, however violent such acts or threats may have been, would of themselves furnish no justification or excuse for the defendant killing the deceased. The defendant must have acted under the belief in good faith at the time to save her own life or to save herself from great bodily harm and it must appear that there was reasonable cause for such apprehension on the part of the defendant; so, if you find from the evidence that the deceased at the time she was killed did nothing to excite in the mind of the defendant that deceased was about immediately to execute any threats she may have made, then such threats whatever you may find them to have been, are wholly unavailing and should not be considered by you as furnishing the defendant any justification or excuse whatever for such shooting. If, however, you find and believe from the evidence that the deceased did make a threat or threats against the life or safety of the defendant, then you should consider them as above instructed."

The criticism of this instruction is that it led the jury to believe that "there was no justification or excuse for the killing" and "misled the jury as to what kind of threats if any threats were necessary to justify the defendant in shooting the deceased." We have quoted from the motion for new trial. The criticism as there stated is obscure. It is not elaborated or clarified in appellant's brief. The instruction certainly does not tell the jury that *there was no justification or excuse* for the killing. As to the failure of the instruction to tell the jury *what kind* of threats would justify defendant in shooting deceased the answer is that *prior threats, alone,* could not justify such act. [See State v. Rider, 95 Mo. 474, 484, 8 S. W. 723; State v. Westlake, 159 Mo. 669, 61 S. W. 243; State v. Sovern, 225 Mo. 580, 125 S. W. 769.] The first paragraph of the instruction is faulty in that it fails to restrict the threats which might be considered as explaining the conduct and apprehension, if any, of the *defendant* at the time of the shooting to such threats as had been communicated to her, but that omission is favorable rather than prejudicial to the defendant. Otherwise the instruction properly explains the purpose for which the threats are to be considered.

The word "wholly" preceding "unavailing" and "whatever" following "justification or excuse" are unnecessary and might well have been omitted, but they do not vitiate the instruction.

IV. Appellant charges prejudicial error in that the jurors were permitted to view a certain picture show at a local theater during the progress of the trial. The only evidence of this episode is furnished by affidavits filed by defendant with her motion for new trial. It is stated, however, in her motion for new trial, that her attorneys stated to the court before permission to attend the show was given, that they had no objection to the jurors attending a picture show if they attended in a body. It is further stated, however, that they indicated to the court that the jury must not be allowed to attend a show at which "any murder was being committed," and that the court assured counsel that a show would be selected at which no such scene was presented. The affidavits filed in support of the motion show that one night during the trial, and before submission of the case to the jury, the jurors did, in a body, attend a picture show in custody of the deputy sheriff who had them in charge. The show is thus described in one of the supporting affidavits: ". . . said picture was a story of a woman that had been keeping company with a millionaire, unknown to her husband; that this millionaire started on a boat trip; that the woman in the picture and her husband were also on the boat; that this millionaire had broken up this woman's home; that after he had broken up this woman's home, he got tired of the woman, paid her a sum of money and jilted her; that the woman took a gun that belonged to her husband and killed the millionaire; that the husband had been charged with the murder; that the woman who had committed the murder finally wrote a note and admitted the murder and committed suicide by jumping into the ocean."

In defendant's motion for new trial there is an intimation,—hardly amounting to a statement,—that defendant considered that the jurors were allowed to separate because of the way they were seated in the theater. The motion does not charge that they separated otherwise. According to the only affidavit that spoke of that matter the jurors were seated thus: "There were two jurors in the first row and then about eight in the next row back of these and then about two in the row back of these eight and the deputy sheriff was with these two." The same affiant stated that she was seated three rows back of the jury; that during the performance some person seated between her and the jury "spoke out and said, 'Isn't it strange that they would be having this picture show here of a murder picture at the same time that the Trainer murder case is being tried;'" that the person who thus spoke was as close to some of the jurors as to the affiant, and since affiant heard the words the jurors must have

heard them. There is no showing that anyone spoke to any of the jurors nor that any of them spoke to any person.

While, as stated above, there is an intimation in defendant's motion for new trial that the jurors were allowed to separate, it is apparent from the lengthy paragraph of the motion complaining of that episode that the real complaint is that the jurors were subjected to improper influence by reason of the kind of picture they were allowed to see. For that reason we shall not discuss the question of separation of the jury, though we do not think there was a separation within the meaning of the statute.

Appellant's contention on this point cannot be allowed. She filed her own affidavit in which she states: "That she had no knowledge of the fact that said jury had gone to the picture show at the Electric Theatre; that she did not consent for said jury to go to said theatre and she did not authorize her attorneys to agree to let said jury attend said Electric Theatre." Does that mean simply that she did not know of it at the time it happened? Her affidavit does not show that she did not learn of it before the case was submitted to the jury. Her attorneys filed a joint affidavit regarding another matter, which we shall refer to later, but it said nothing about lack of knowledge on their part of the matters now complained of concerning the jury's attendance at the theater in question, the kind of show given or the incidents claimed to have occurred there. In short it does not appear that defendant and her counsel, especially her counsel, were not cognizant of these matters prior to submission of the case to the jury.

In State v. Howard, 118 Mo. 127, 24 S. W. 41, it was urged on motion for new trial that two jurors had prejudged the case. This court said, 118 Mo. l. c. 136, 24 S. W. 41, l. c. 43: "In the first place, it does not appear only in the affidavit of *defendant* that he was not aware of the existence of prejudgment on the part of those jurors at the time of their selection. *Non constat* but that his counsel was fully aware of such disqualifying fact, since no intendments are entertained in favor of objections of this sort; nor are they favored by the courts. The rule is that any such objection to a juror must be supported as well by the affidavit of *counsel* as of *client*; nothing less than this suffices. [State v. Burns, 85 Mo. 47; 1 Thompson on Trials, Section 116; Thompson & Merriam on Juries, Sections 275, 302.]"

The holding in the Howard case was approved in State v. Hunt, 141 Mo. 626, 637, 43 S. W. 389, wherein the court said that a motion for new trial alleging a similar ground "must have been supported by both the affidavit of the defendant and his counsel; nothing less will answer the behests of the law."

In State v. Robinson, 117 Mo. 649, 23 S. W. 1066, complaint was made in the motion for new trial of certain alleged misconduct of

a juror. It was not shown that the defendant did not know of the fact before the jury retired to deliberate. The court said, 117 Mo. l. c. 666, 23 S. W. 1066, 1071: "If the complaining party knew during the trial of such misbehavior, it was his duty to call immediate attention of the court to it, and not take his chances of a reversal based on such ground."

The foregoing cases were approved and followed in State v. Barrington, 198 Mo. 23, 95 S. W. 235, where complaint was made concerning alleged misconduct of a juror and the record failed to disclose when knowledge thereof came to the defendant or his counsel. The court quoted the rule on this subject as stated in 12 Ency. of Pleading and Practice, page 558: "When a party moves for a new trial on the ground of misconduct which occurred during the trial, he must aver and show affirmatively that both he and his counsel were ignorant of the misconduct charged until after the trial." [198 Mo. l. c. 93.]

The rule announced in the above cases is applicable to the situation here presented, and we perceive no good reason for departing from it. If defendant or her counsel knew, before submission of the case, of the matters of which she now complains, no reason appears, as it did in State v. Malone, 333 Mo. 594, 609, 62 S. W. (2d) 909, 915, why she could not then have called the trial court's attention thereto and sought redress.

There is another ground on which this contention might be disallowed. The record indicates that the court heard evidence on the motion, though the evidence is not preserved in the bill of exceptions. The bill of exceptions recites that on a certain day "the motion for new trial heretofore filed was taken up and considered by the court, evidence and counsel is heard," and that the motion was taken under advisement by the court and later overruled. We think it should be presumed, absent anything appearing to the contrary, that the evidence was sufficient to and did satisfy the court that defendant had not been prejudiced.

■ V. Two other occurrences during the trial are complained of in the motion for new trial and shown by supporting affidavits. One is this: It is claimed that during the cross-examination of the defendant, when she had answered some question, one of the attorneys representing the State said to his co-counsel,—"That sticks her," and at another time,—"That puts her over." Defendant had two attorneys. They joined in an affidavit stating that they heard said remarks and that the remarks were made in a loud enough tone of voice that the jury must have heard them.

The other occurrence complained of is that during the argument of the case Frank Gill, judge of the county court, sat within the railing separating the space in the courtroom reserved for attorneys and

parties from that occupied by spectators, "facing the prosecuting attorney and his assistants, commenting on their speeches." It is not claimed that he took any part in the proceedings nor that his alleged comments could have been heard by the jury. Appellant's thought, judged by the affidavits, seems to be that the presence of Judge Gill inside the railing, he being a judge of the county court, suggested to the jury that he was favorable to the prosecution. Counter affidavits of Judge Gill and the attorneys for the State show that he was within the railing at the invitation of a deputy sheriff and because the seats back of the railing were filled, and was guilty of no misconduct.

The complaint concerning Judge Gill is so devoid of merit as not to justify discussion. But as to both these occurrences they were known to defendant's counsel at the time. They occurred in the courtroom in the progress of the trial. No objection or complaint was made at the time and there was no request for any action by the court. It does not appear that the court's attention was called to these matters at the time in any way. Their occurrence is mentioned for the first time in the motion for new trial and shown only by the affidavits filed in support thereof. A party cannot be permitted thus to remain silent and apparently acquiescent while things transpire, with his knowledge, in the course of the trial and then after verdict, if it be adverse to him, complain that he was prejudiced. Appellant's contention in regard to these matters is disallowed.

VI. Appellant complains that the court erroneously excluded certain hospital records showing that a relative had been insane. It was not claimed that defendant was insane. But a complete answer to this contention is that it does not appear from the bill of exceptions that defendant offered to introduce said records in evidence.

Appellant in her brief assigns as error that the court permitted her to be cross-examined on matters regarding which she was not examined in chief. It is doubtful whether this point is sufficiently preserved in the motion for new trial, but in any event the contention cannot be sustained. We do not think the cross-examination was improper. But there was no objection made on that ground, therefore the question need not be further discussed.

Appellant appears to have had a fair trial and the verdict is supported by substantial evidence. Indictment, verdict and judgment are in due form and sufficient. We find no prejudicial error in the record. The judgment is affirmed. *Westhues* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.